**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANTONIO R. TOLBERT,

                Plaintiff,

vs.                                  Case No.  3:08-cv-1236-J-JRK

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

## <u>OPINION AND ORDER</u>[1]

### I.  Status

      Antonio R. Tolbert ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income and disability insurance benefits.  His alleged inability to work is based on "severe headache[s] and dizziness," as well as "hear[ing] voices" associated with paranoid schizophrenia. Transcript of Administrative Proceedings (Doc. No. 7; "Tr.") at 77, 79, 80; Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 11; "Pl.'s Mem.") at 17.  Plaintiff filed applications for supplemental security income and for disability insurance benefits on December 9, 2004.  Tr. at 66-70.[2]  Plaintiff alleged an onset date of June 12, 1996.  Tr. at 66, 24.  An ALJ held a hearing on October 3, 2007, Tr. at 434-53, and issued a Decision on February 21, 2008, finding Plaintiff not disabled through the date of the

_____

      [1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, <u>see</u> Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 5), and the Order of Reference was entered on March 11, 2009 (Doc. No. 8).

      [2]      Plaintiff's application for supplemental security income is not included in the record, but in the Decision denying Plaintiff's claims, the Administrative Law Judge ("ALJ") indicated an application for supplemental security income was filed on the same day as the application for disability insurance benefits.  Tr. at 24.

Decision. Tr. at 21-43. On October 24, 2008, the Appeals Council denied Plaintiff's request for review. Tr. at 5-7. On December 23, 2008, Plaintiff commenced this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff, who was thirty-five years old at the time of his hearing before the ALJ (Tr. at 437), argues the ALJ erred in three ways: (1) by "evaluating Mr. Tolbert's entire claim for benefits pursuant to the Contract with America Advancement Act of 1996 (["]CAAA["])"; (2) by "fail[ing] to properly account for all of Mr. Tolbert's impairments and limitations that were separate and distinct from any substance use disorder when determining his residual functional capacity [("RFC")]"; and (3) "by failing to address the medical opinion evidence from Dr. Lye, Mr. Tolbert's treating psychiatrist." Pl.'s Mem. at 16-25 (italics omitted). After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's decision is due to be reversed and remanded for further proceedings consistent with this opinion.

## II. Facts

The medical evidence in the record reveals that most of Plaintiff's treatment for mental problems has been either during incarceration or during conditional release from incarceration. The evidence dates back to November of 1997 (Tr. at 232), when Plaintiff was incarcerated for a term of almost three years after being convicted of battery on a law enforcement officer and resisting arrest. Tr. at 170, 197, 198, 205, 208. Initially, Plaintiff's "diagnostic picture [was] unclear." Tr. at 230. However, Plaintiff was eventually diagnosed by physicians at the Department of Corrections ("DOC") with paranoid schizophrenia and

polysubstance abuse (in remission), and he received regular treatment for the schizophrenia.[3] Tr. at 203, 202, 201, 200, 198, 197, 196, 195, 194, 193, 192, 191, 182, 173, 171, 170, 167, 166, 163, 161, 160, 156-57, 153, 141, 134, 126.  It was also noted on several occasions that Plaintiff had been in a motor vehicle accident at the age of seventeen, and that his mental health problems began at that time.  Tr. at 208, 205, 204, 202, 198, 194.

On October 8, 2000, one day after his release from the three year term of incarceration, Plaintiff allegedly

> exposed himself to a woman after dropping his pants, then got into his car and drove to another street where he was reported to be selling drugs to individuals. He then drove between two houses, taking out a fence.  Mr. Tolbert reportedly drove further down the street and backed into a witness, pinning her against a fence, before he stole her irrigation hose from her front yard.  Mr. Tolbert then continued down the same street where another victim was standing in his front yard.  Mr. Tolbert reportedly struck him with the vehicle, pinning him against his house.  When Mr. Tolbert backed off of the victim, he tried to crawl away, at which time Mr. Tolbert reportedly ran over the victim's legs.

Tr. at 276.  Plaintiff was charged with aggravated battery, leaving the scene of an accident resulting in injury, burglary of a dwelling, and possession of cocaine.  Tr. at 276.

In relation to Plaintiff's pending criminal charges, Plaintiff was interviewed by Steven Bloomfield, Ed.D., on February 17, 2001 and February 26, 2001 (Tr. at 293-94, 295-96), and he was interviewed by Serena Laurie Bloomfield, Ed.D. on March 8, 2001.  See Tr. at 237.[4] On February 17, 2001, Dr. Steven Bloomfield reported Plaintiff presented "in a bizarre manner" and opined that Plaintiff met the criteria to be considered not guilty by reason of insanity.  Tr. at 295-96.  On February 26, 2001, Dr. Steven Bloomfield opined Plaintiff was

---

[3]       The record also contains scattered diagnoses of antisocial personality disorder (Tr. at 223, 221, 219, 217) and Trichotillomania (Tr. at 223, 221, 219, 214) during this time period.

[4]       The only documentation in the record of the interview occurring on March 8, 2001 appears in subsequent records from the Florida State Hospital.  See Tr. at 237, 251.

not competent to proceed. Tr. at 293-94. Dr. Serena Bloomfield opined that Plaintiff was incompetent to proceed to trial and that he met the criteria for involuntary hospitalization. Tr. at 237.

Plaintiff was found incompetent to proceed to trial by the Honorable Lance M. Day, Circuit Court Judge of the Fourth Judicial Circuit of the State of Florida, was committed to Florida State Hospital on March 12, 2001, and was admitted on April 19, 2001. Tr. at 263, 241, 234, 282. Plaintiff was seen for an Initial Clinical Assessment on the date of his admission. Tr. at 241-43. At that time, Plaintiff was diagnosed with psychosis due to polysubstance abuse (in remission), and he was suspected of malingering. Tr. at 242-43. On or about May 11, 2001, Plaintiff was seen by Linda Smith, M.Ed., Human Service Counselor, who summarized Plaintiff's relevant history and made recommendations regarding treatment. Tr. at 250-53. On July 16, 2001, Plaintiff was interviewed for a third time since admission to Florida State Hospital by Pamela A. Mark, M.S., a Psychology Intern,[5] for the purpose of determining whether Plaintiff was competent to proceed to trial. Tr. at 236-40; 283-87 (duplicate).[6] Plaintiff admitted to having drug and alcohol addictions, attributing his alcohol addiction to his problems with drugs. Tr. at 237. Plaintiff also reported having been in a motor vehicle accident at the age of seventeen. Tr. at 237.

Ms. Mark opined that "[s]ince [Plaintiff's] psychosis was attributed to his illicit drug use, his remission is likely to be due to his detoxification." Tr. at 238. Ms. Mark noted that Plaintiff had adjusted well to the facility. Tr. at 238. "Although [Plaintiff] reported

---

[5]     Ms. Mark was under the supervision of Ellen Resch, Ph.D., Intern Director, and Angela C. Register, Ph.D., Licensed Psychologist. Tr. at 240, 234.

[6]     Because notations regarding this evaluation appear twice in the record, citations hereinafter are to the first notation.

experiencing auditory hallucinations upon admission, they remitted over the first few weeks without the use of psychotropic medications." Tr. at 238. Ms. Mark further indicated that Plaintiff was "a questionable source of information at this time, based primarily upon his self-reported memory deficits for time periods associated with drug use." Tr. at 239. Ultimately, Ms. Mark determined Plaintiff was competent to proceed to trial and recommended returning him to the Duval County Jail to await further proceedings. Tr. at 240. Plaintiff was released to the Sheriff of Duval County on August 16, 2001. Tr. at 234.

On September 19, 2001, Plaintiff was evaluated by Peter Knox, M.Ed., Psy. D., to assess his competency to proceed to trial. Tr. at 269-73. Plaintiff was confused: he was not able to remember definitively how long he had lived in Jacksonville, Florida; he thought he had attended high school "'at the Coliseum'"; he did not know whether his mother and father were married; he first reported having no siblings but later stated he had one little brother; he stated he had no children, when past reports indicated Plaintiff has three children; he reported not being able to remember using drugs and denied ever using drugs or alcohol; and he did not remember having been evaluated for competency just two months prior. Tr. at 269-72. Plaintiff recalled his mother having told him "that he hit her car and hurt his head." Tr. at 270. Dr. Knox surmised Plaintiff was referencing a car accident that had occurred about ten years earlier and noted Plaintiff had "visible scars on his forehead from this accident." Tr. at 270-71. Dr. Knox opined Plaintiff was not competent to proceed to trial. Tr. at 273. Dr. Knox indicated that Plaintiff had a "severely impaired" long-term memory, which was "thought to be caused by chronic drug and alcohol abuse since high school." Tr. at 273. According to Dr. Knox, it was "highly likely" that the drug and alcohol abuse caused

brain damage.  Tr. at 273.  Dr. Knox also thought Plaintiff was "suffering from Paranoid Schizophrenia[.]"  Tr. at 273.  Further, Dr. Knox stated Plaintiff

> was **[i]nsane at the time of his crime** due to his probable brain damage and schizophrenia.  He was likely under the influence of cocaine and alcohol at the time of his crime and therefore does not remember his actions.  He should be considered a danger to himself and others and should be admitted to a psychiatric treatment facility.  Mr. Tolbert also has a serious drug and alcohol addiction that needs to be treated.  He should also be evaluated for medication in order to control the voices that he hears in his head.

Tr. at 273 (emphasis in original).

About six months later, on March 7, 2002, Plaintiff was admitted to the North Florida Evaluation and Treatment Center.  Tr. at 276.  While at the Treatment Center, Plaintiff denied having children, although he has three; he denied using drugs and alcohol; and he denied having previously participated in alcohol or substance abuse treatment.  Tr. at 277.  Plaintiff "reported experiencing perceptual disturbances in the form of auditory and visual hallucinations," having heard "the voices since he was seventeen or eighteen years old[.]"  Tr. at 277-78.  Upon admission, Plaintiff was prescribed Olanzapine, 10 mg., but this prescription was later decreased, on April 1, 2002, to 5 mg. "as it became more evident that his signs and symptoms of his alleged mental illness were atypical and therefore suggestive of malingering."  Tr. at 278.  Plaintiff adjusted well to the facility, achieving "Resident Alone status within one week after his admission," and never having any status reduction.  Tr. at 278.  "This status level allow[ed] him unsupervised access to th[e] facilities campus area throughout daytime hours."  Tr. at 278.  Plaintiff's evaluators opined he was malingering.  Tr. at 279.  Additionally, the evaluators opined Plaintiff "has sufficient ability to consult with counsel with a reasonable degree of rational understanding and has a rational, as well as factual, understanding of his pending charges."  Tr. at 280.  Accordingly, on or about July

15, 2002, it was recommended that Plaintiff be "deemed competent to proceed."[7] Tr. at 280-81.

On May 7, 2003, Ernest C. Miller, M.D. conducted a psychiatric evaluation of Plaintiff at the request of the Judge presiding over Plaintiff's then-pending criminal case. Tr. at 288-91. Plaintiff reported "occasional drinking," and having tried drugs "'off and on.'" Tr. at 289 (quoting Plaintiff). Plaintiff also indicated "[h]e would like to return to work" and "considered applying for SSI." Tr. at 290. Plaintiff stated he had occasional headaches and some difficulty with concentration and memory. Tr. at 290. Dr. Miller diagnosed Plaintiff with "Scizophrenic Disorder, paranoid type" and "Substance Abuse, history of cocaine/alcohol." Tr. at 290. Dr. Miller opined Plaintiff was competent at the time to proceed; however, Dr. Miller also opined "he was insane at the time of the alleged crime." Tr. at 290. Dr. Miller referenced the possibility of placing Plaintiff on conditional release, and noted "it should be very structured" and contain numerous stringent requirements. Tr. at 290.

Thereafter, on or about July 14, 2003, Plaintiff was placed on conditional release and began residing at Arlington Haven. Tr. at 297, 380 (notes dated 7/28/03 indicating "patient is living at the Arlington Haven for the last two weeks"). Beginning on July 28, 2003, Plaintiff started receiving treatment from Benjamin Lye, M.D., at the Mental Health Center of Jacksonville, Inc. Tr. at 379-83. Plaintiff reported to Dr. Lye having used cocaine, marijuana, and alcohol since he was about nineteen years old. Tr. at 380. Plaintiff stated he had three children. Tr. at 381. Plaintiff was not experiencing any hallucinations or illusions at that time. Tr. at 382. Dr. Lye diagnosed Plaintiff with polysubstance induced

---

[7] The Termination of Treatment Summary from North Florida Evaluation and Treatment Center is signed by Lisa M. Cue, Social Services Counselor (dated July 15, 2002), Roger Davis, Ph.D., Staff Psychologist (dated July 16, 2002), and James Yelton, M.D., Staff Psychiatrist (dated July 17, 2002). Tr. at 281.

psychotic disorder, history of malingering, history of schizophrenia (paranoid type), history of polysubstance dependence, and history of antisocial personality. Tr. at 382-83. Plaintiff was to remain on Trilafon, 8 mg., and Depakote ER, 500 mg. Tr. at 383. During subsequent evaluations from August 18, 2003 through October 15, 2003 Plaintiff denied any recent use of drugs and alcohol, and Plaintiff's mental status was stable. Tr. at 378, 376, 374.

Plaintiff was described in a December 3, 2003 progress report from Arlington Haven as "a model resident[.]" Tr. at 297. Erica Lary, B.S., Plaintiff's Forensic Case Manager, proposed allowing Plaintiff to live with his mother "[b]ecause of [Plaintiff's] well-mannered behavior, and compliancy with medication and treatment[.]" Tr. at 298.

On December 4, 2003, Plaintiff denied any recent use of drugs and alcohol; however, he "claim[ed] that he started hearing off and on echo voices but [could not] elaborate further." Tr. at 372. Dr. Lye noted Plaintiff was having "break through psychotic symptoms[.]" Tr. at 372 (capitalization omitted). Plaintiff's dose of Perphenazine was increased to 12 mg. to be taken at night. Tr. at 373. On January 7, 2004, Dr. Lye noted Plaintiff "showed no signs of relapse on his substance abuse" and "improvement [was] seen[.]" Tr. at 370 (capitalization omitted). On February 5, 2004, Plaintiff had started "working full-time" as a pipe-layer helper with future plans to become a truck driver. Tr. at 369. By March 8, 2004, however, Plaintiff reported having stopped working. Tr. at 368. Plaintiff was still living at Arlington Haven but his mother was visiting him often. Tr. at 368. Plaintiff denied any recent drug or alcohol use. Tr. at 368.

By April 20, 2004, Plaintiff was living with his mother. Tr. at 367. Plaintiff denied recent problems with drugs or alcohol. Tr. at 367. Dr. Lye indicated Plaintiff was "having possible extrapyramidal symptoms and side effects." Tr. at 367. Plaintiff's dose of

Perphenazine was adjusted to 8 mg. to be taken at night. Tr. at 367. During subsequent examinations on June 7, 2004, July 9, 2004, and August 6, 2004, Plaintiff's mental status was stable and he denied any recent use of drugs and alcohol. Tr. at 366, 365, 364. On the latter two visits, the dose of Perphenazine was decreased to 4 mg. to be taken at night. Tr. at 365, 364.

On September 8, 2004, Dr. Lye was concerned Plaintiff "may be responding to internal stimuli," and he was showing "[p]ossible early signs of relapse." Tr. at 363. Dr. Lye indicated he "may need to reassess [Plaintiff's] diagnosis." Tr. at 363. Plaintiff's dose of Perphenazine was adjusted to 8 mg. to be taken at night, and he was instructed to take Benadryl for his sleeping problems in lieu of a sleeping pill. Tr. at 363.

On September 22, 2004, Dr. Lye "re-diagnose[d] [Plaintiff with] schizophrenia, paranoid type[.]" Tr. at 362. It was noted that Plaintiff had "stopped mumbling to himself." Tr. at 362. Plaintiff denied any recent use of drugs or alcohol. Tr. at 362. On October 22, 2004 and November 10, 2004, Plaintiff's mental status was stable and he denied any recent use of drugs and alcohol. Tr. at 361, 360. However, on January 12, 2005, Plaintiff "complained about hearing voices, but [could not] elaborate." Tr. at 359. Plaintiff expressed being paranoid and complained of having headaches. Tr. at 359. Plaintiff denied any recent use of drugs or alcohol. Tr. at 359. Dr. Lye noted "Regression seen," increased Perphenazine to 12 mg. to be taken at night, and reintroduced Depakote ER 500 mg. Tr. at 359. On February 15, 2005, Dr. Lye saw improvement. Tr. at 358. On March 3, 2005, Dr. Lye completed a Treating Source Mental Health Report for the Division of Disability Determinations, in which he indicated Plaintiff's diagnosis was "schizophrenia, paranoid

type" and opined that "[d]ue to patient's mental illness, he becomes anxious when working long periods of time. Patient is able to work part-time." Tr. at 315-16.

On February 24, 2005, state agency physician Steven L. Wise, Psy.D. reviewed Plaintiff's medical records and completed a Psychiatric Review Technique form. Tr. at 301-14. Dr. Wise opined Plaintiff's mental impairment was not severe. Tr. at 301. Dr. Wise also opined Plaintiff would have mild restrictions in activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. Tr. at 311. According to Dr. Wise, Plaintiff had no episodes of decompensation lasting any extended duration. Tr. at 311. Dr. Wise opined Plaintiff was "in good remission" and his "mental [impairment] [was] not severe currently[.]" Tr. at 313.[8]

On August 16, 2005, state agency psychiatrist Alejandro F. Vergara, M.D. also reviewed Plaintiff's medical records and completed a Psychiatric Review Technique form. Tr. at 337-50. Dr. Vergara opined that Plaintiff's "[i]mpairment(s)" were not currently severe. Tr. at 337. Dr. Vergara recognized Plaintiff's diagnosis of schizophrenia, paranoid type, and noted Plaintiff was "well stabilized with medications." Tr. at 349. Dr. Vergara also noted that Plaintiff's polysubstance abuse and dependence was in remission. Tr. at 349.

The next evaluation notes from Dr. Lye are dated January 6, 2006. Tr. at 357. On this visit, Plaintiff denied any recent use of drugs or alcohol. Tr. at 357. Plaintiff's mental status was stable. Tr. at 357. His dose of Perphenazine was increased to 24 mg. to be taken at night, and 2000 mg. of Depakote ER were prescribed, also to be taken at night. Tr.

---

[8]     On March 29, 2005, H. Tran, M.D. completed a physical examination of Plaintiff. Tr. at 321-24. Plaintiff complained of headaches that had started in 1998. Tr. at 321. There were no abnormal physical findings. Tr. at 324. Also, on August 12, 2005, state agency physician Reuben E. Brigety, M.D. reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment (Tr. at 328-36), in which Dr. Brigety opined Plaintiff did not have any exertional limitations. Tr. at 329.

at 357.  During the next sixteen months, until May 2, 2007, Plaintiff's mental status was stable; he denied any recent use of drugs or alcohol; and he even indicated at times that he was attempting to get a job.  Tr. at 356, 355, 354, 353, 352, 351, 391, 390, 389, 388, 387.  On Plaintiff's last visit of record, June 27, 2007, Plaintiff complained of headaches.  Tr. at 385.  Plaintiff's mother accompanied him to the evaluation and indicated that he "sits and stares[,] [h]e paces the floor, and there are times he talks to himself."  Tr. at 385.  According to Plaintiff's mother, there was "no way" he could go to work.  Tr. at 385.

On December 10, 2007, at the request of the ALJ, Plaintiff was seen by Jerry Valente, Ph.D., J.D., M.B.A., P.A. for a consultative psychological evaluation.  Tr. at 393-404.  Plaintiff indicated to Dr. Valente that he has four children.  Tr. at 395.  Plaintiff reported having short-term memory problems and "difficulty watching television" due to being easily distracted.  Tr. at 396.  Dr. Valente performed several psychological tests on Plaintiff, the results of which "underestimate Mr. Tolbert's [then-]current memory functions due to suspected malingering."  Tr. at 396.  Dr. Valente diagnosed Plaintiff with substance induced psychotic disorder with hallucinations (by history), schizophrenia, paranoid type (by history), malingering, antisocial personality traits, and migraines.  Tr. at 403.  Dr. Valente opined Plaintiff had a "stable mental status absent of psychotic features since December of 2003 until Dr. Lye's most recent evaluation in June of this year[.]"  Tr. at 403.

On January 17, 2008, Dr. Lye completed "OHA/ALJ Interrogatories to Treating Physician," in which Dr. Lye was asked the following:

> 8.      If the claimant had stopped using alcohol when you first urged him or her to do so, what effect would that have had on his or her health, and what would be his or her condition today?

Tr. at 409. Dr. Lye checked the line next to "None," and explained "claimant was abstinent prior to 1st consultation." Tr. at 409. Additionally, Dr. Lye was asked:

> 9.      If the claimant stopped using alcohol now, what effect would that have on his or her health and alleged disabling conditions?

Tr. at 409. Dr. Lye checked the line next to "None," and explained "claimant is abstinent." Tr. at 409. In response to similar questions regarding illegal, non-prescription drugs, Dr. Lye indicated, "Client is no longer using illegal substances," Tr. at 410, and "Client refrained from illegal drugs before 1st psychiatric consultation." Tr. at 411.

At his hearing before the ALJ on October 3, 2007, Plaintiff seemed somewhat confused about when his drug use stopped. Initially, Plaintiff indicated that he stopped using "[m]aybe two or three years ago." Tr. at 439. Upon further inquiry, Plaintiff recalled being incarcerated from 1997-2000, and again from 2000-2003, and not using drugs or alcohol during those times. Tr. at 441-42. Plaintiff also denied having used drugs during the time period of 2003-2005, because he was on probation or conditional release, and was "[t]aking urine tests." Tr. at 443-44. Plaintiff then testified he stopped using drugs in 2005. Tr. at 443.

Regarding Plaintiff's mental limitations, Plaintiff stated he attempted to go back to work in 2004 as "a laborer," but had to quit because of "the voices in [his] head, headaches." Tr. at 438. Plaintiff attributed the voices in his head to smoking cigarettes. Tr. at 444-45. According to Plaintiff, he heard voices as recently as the month prior to the hearing. Tr. at 448. However, Plaintiff indicated the medications prescribed by Dr. Lye stopped the voices. Tr. at 449.

Plaintiff testified he lives with his mother and twenty-nine year old brother. Tr. at 450-51. As far as daily activities, Plaintiff stated he watches television, listens to the radio, does the laundry, and cuts the grass. Tr. at 451.

### III. The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: (1) is currently employed; (2) has a severe impairment; (3) has an impairment that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). In addition, the CAAA of 1996 (codified as amended at 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J)) "amended the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled." Doughty v. Apfel, 245 F.3d 1274, 1275 (11th Cir. 2001). Accordingly, if an ALJ "determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the [ALJ] then 'must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability.'" Id. at 1279 (quoting 20 C.F.R. § 404.1535). The "key factor" in this materiality determination "is whether the claimant would still be found disabled if he stopped using drugs or alcohol." Doughty, 245 F.3d at 1279 (citing 20 C.F.R. § 404.1535(b)(1)). "[T]he claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination. . . ." Doughty, 245 F.3d at 1281.

The ALJ performed the required five-step sequential inquiry twice.  In performing the first five-step sequential inquiry, the ALJ assumed Plaintiff was still using drugs and alcohol.  At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since June 12, 1996 (the alleged onset date).  Tr. at 28.  At step two, the ALJ found Plaintiff suffers from the following severe impairments: "history of substance induced psychotic disorder with hallucinations, history of schizophrenia, paranoid type, malingering[9], antisocial personality traits, and headaches[.]"  Tr. at 28.  At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 32.

The ALJ determined that "based on all of the impairments, including the substance-use disorders, the claimant does not have the [RFC] to sustain work at any level of exertion on a regular and continuing basis, not even sedentary."  Tr. at 34.  At step four, the ALJ found Plaintiff is not capable of performing his past relevant work as a construction worker.  Tr. at 35.  At step five, the ALJ determined that Plaintiff cannot perform any jobs that exist in significant numbers in the national economy.  Tr. at 35.

The ALJ then proceeded with a second five-step sequential inquiry and made findings as "if the claimant [had] stopped the substance use[.]"  Tr. at 36.  Here, the ALJ found at step two that "the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to

---

9       Inasmuch as malingering is defined as "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs," Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) at V65.2, it is difficult to ascertain how this condition was categorized as a severe impairment.

have a severe impairment or combination of impairments." Tr. at 36. At step three, the ALJ stated that absent substance use, Plaintiff would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 36. The ALJ found that absent substance use, "the claimant would have the [RFC] to perform the full range of medium work. The claimant would be capable of performing simple, routine tasks." Tr. at 37. At step four, the ALJ determined that Plaintiff "would continue to be unable to perform past relevant work" if he stopped using substances. Tr. at 41. At step five, the ALJ applied Plaintiff's age, education, work experience, and RFC to the Medical-Vocational Guidlines and determined that "there would be a significant number of jobs in the national economy that Plaintiff could perform" should he stop using substances. Tr. at 42. Because the ALJ determined that substance use was a contributing factor material to the determination of disability, the ALJ concluded Plaintiff was not under a disability[10] from June 12, 1996 through the date of the decision. Tr. at 42.

## IV.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty, 245 F.3d at 1278 (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v.

---

[10]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## V.  Discussion

Plaintiff argues the ALJ erred in three ways: (1) by applying the CAAA and finding that Plaintiff's "substance use disorder" is a contributing factor material to the determination of disability (Pl.'s Mem. at 16-17); (2) by improperly determining Plaintiff's RFC absent his substance use (id. at 17-21); and (3) by failing to address certain opinion evidence of treating psychiatrist Dr. Lye (id. at 21-25). Because the first two issues are intertwined, they are addressed together. Then, the opinion evidence of Dr. Lye is addressed.

### A.    ALJ's Application of the CAAA, Findings Regarding Plaintiff's Substance Use, and Determination of Plaintiff's RFC Absent his Substance Use

Plaintiff contends the ALJ should not have applied the CAAA in evaluating Plaintiff's claim for benefits in light of the evidence in the record indicating Plaintiff had stopped using drugs and alcohol in 2003, almost five years prior to the ALJ's Decision. Pl.'s Mem. at 16. The Regulations implementing the CAAA state, "If we find that you are disabled and have

medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a) (emphasis added). Because the Regulations contemplate any medical evidence of drug addiction or alcoholism, the CAAA is properly applied when the record contains such evidence and the claimant is found disabled. As explained herein, the record is replete with evidence that Plaintiff had problems with drugs and alcohol; accordingly, the ALJ applied the correct legal standards (the CAAA and its implementing Regulations) when evaluating Plaintiff's claims.

Plaintiff also contends the ALJ erred in finding that substance use was a contributing factor material to the determination of disability, in light of Plaintiff's cessation of drug use and alcohol abuse for the five years preceding the ALJ's Decision. Pl.'s Mem. at 16-17. Further, Plaintiff argues that the ALJ failed to take into account impairments that are separate and distinct from any substance use disorder when determining Plaintiff's RFC. Id. at 17-21. In response, the Commissioner points to Plaintiff's testimony at the hearing "that his abuse stopped during the period of 2004-2005," not in 2003. Memorandum in Support of the Commissioner's Decision (Doc. No. 12; "Deft.'s Mem.") at 9 (citing Tr. at 439, 441, 443-44). The Commissioner also finds support in the ALJ's determination "that absent Plaintiff's alcohol and drug use, he retained the RFC to perform the full range of medium work." Deft.'s Mem. at 9 (emphasis in original). Therefore, argues the Commissioner, "Plaintiff failed to meet his burden [of proving] that he would still be disabled if he stopped using drugs or alcohol." Id. at 10. With respect to the ALJ's RFC assessment, the Commissioner argues that "the record provides substantial evidence to support the ALJ's

finding that Plaintiff could perform a range of medium work, absent his drug and alcohol abuse[.]" Id. at 12.

In determining that Plaintiff's use of drugs and alcohol was a contributing factor material to his disability, in the ALJ's first five-step sequential inquiry, the ALJ found that Plaintiff does not have the RFC "to sustain work at any level of exertion on a regular and continuing basis, not even sedentary." Tr. at 34 (emphasis omitted). To that end, the ALJ explained:

> The evidence shows that the claimant's use of drugs and alcohol caused the claimant to have psychosis. Dr. Lye indicated that while he was intoxicated with drugs and alcohol, namely cocaine and marijuana, the claimant committed crimes. The claimant's use of substances result[ed] in him appearing to have a brief psychotic break. Several practitioners indicated that the claimant was insane at the time that he committed his crimes. He was deemed unable to assist his attorney in defending him in court. The claimant required hospitalization for stabilization. While using drugs and alcohol, the claimant indicated that he experienced visual and auditory hallucinations.

> After careful consideration of all the evidence, the undersigned finds that the claimant is credible concerning the following symptoms and limitations: his limited functioning while under the influence of drugs and alcohol. This is supported by the assessment of numerous mental health practitioners who indicated that the claimant had limited functioning while abusing substances.

Tr. at 34-35. Next, the ALJ opined that "[i]f the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments." Tr. at 36 (emphasis omitted). After making this finding, the ALJ further found that "[i]f the claimant stopped the substance use, the claimant would have the [RFC] to perform the full range of medium work. The claimant would be capable of performing simple, routine tasks." Tr. at 37 (emphasis omitted).

The ALJ recognized in his Decision Plaintiff's testimony "that he stopped using drugs and alcohol 2 or 3 years ago." Tr. at 39. However, the ALJ also indicated that "[i]f the

claimant stopped the substance use, . . . the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. at 39. The ALJ acknowledged Plaintiff's allegations of headaches, but noted Plaintiff had not "received treatment for a significant physical impairment." Tr. at 39. The ALJ went on to state "the record clearly shows that during the times when the claimant was no longer using drugs and alcohol, his condition improve[d]." Tr. at 40. The ALJ then summarized Plaintiff's treatment by Dr. Lye and other treating sources, as well as the consultative examination by Dr. Valente. Tr. at 40. The ALJ concluded that "[a]lthough . . . the claimant has some degree of limitation, the objective and other evidence simply does not establish that the limitations are as disabling as the claimant alleges." Tr. at 40. The ALJ considered that "[t]he records show a history of treatment for mental impairments," but opined that "[t]he various mental health providers all agree that the claimant's psychosis was caused by his use of drugs and/or alcohol." Tr. at 40.

In reviewing the ALJ's determinations regarding Plaintiff's substance use issues and his RFC, Glover v. Barnhart, No. 5:06-CV-195 (LEK/DEP), 2009 WL 35290 (N.D.N.Y. Jan. 5, 2009) (unpublished) is instructive.[11] The plaintiff in Glover "suffer[ed] from multiple diagnosed mental disorders as well as a long-standing alcohol and drug abuse condition[.]" Glover, 2009 WL 35290, at *1. The plaintiff, who was thirty-two years old at the time of his hearing before an ALJ, lived with his mother, "who [took] care of most of his domestic responsibilities, including cooking and cleaning." Id. at *1-2. The evidence of record

_____

[11]     In Glover, the United States Magistrate Judge rendered a Report-Recommendation regarding the disposition of the case, which was adopted in its entirety by the United States District Judge. Glover, 2009 WL 35290, at *1.

indicated the plaintiff had significant problems with alcoholism. Id. at *2-6. Various medical personnel and doctors had different diagnoses, including alcoholism, cocaine abuse, nicotine abuse, a history of marijuana abuse, an adjustment disorder with depressed mood, schizophrenia, depressive disorder, likely substance-induced psychotic disorder, major depression in remission, schizoaffective disorder, post-traumatic stress disorder, and social phobia. Id. The ALJ concluded that although the plaintiff was disabled, the disability was "primarily the result of his alcohol and drug abuse, and . . . if he did not indulge in such substance abuse, he would not be disabled." Id. at *10.

The Glover court recognized that "[t]he record convincingly discloses, and plaintiff does not deny, that he suffers from a long history of drug and alcohol abuse and that the condition appears to be significantly intertwined with the various mental disorders discerned and treated over the years by plaintiff's mental health care providers." Id. at *9. Further, the court noted that "[a] considerable body of the evidence, including reports related to [the] plaintiff's earlier hospitalizations, appear to place primary emphasis upon his substance abuse, and suggest that it predominates." Id. at *10. However, the court also took into account later reports which suggested that the plaintiff's mental disorders were distinct from his substance abuse issues, but that the plaintiff used substances "as a form of self-medication[.]" Id.

The court recognized that the ALJ "followed the correct legal standard to be applied in analyzing the materiality of plaintiff's alcohol and substance abuse problems to his mental health conditions[.]" Id. However, the court determined that "it [was] not at all clear that the evidence was properly weighed" because "it appear[ed] that the ALJ may have been focusing only upon the evidence most favorable to her decision." Id. "By discounting

evidence of [the] plaintiff's treating physician" and a letter indicating that the plaintiff's mental health problems were primary but alcohol was used as a form of self-medication, "the ALJ effectively refused to examine whether or not [the] plaintiff might be disabled by way of a schizoaffective or post-traumatic stress disorder." Id. Therefore, "[b]ecause reasonable doubt exist[ed] as to whether the ALJ deliberately chose only the medical evidence favorable to her determination of no disability by reason of [the] plaintiff's drug and alcohol usage," the court remanded the case "for the purpose of reconsidering whether the evidence proffered by the plaintiff was sufficient to give rise to a finding of disability." Id. at *11.

Here, similar to Glover, it is unclear whether the ALJ took into account evidence which is not favorable to his findings and conclusions. The Decision is infirm in four ways with respect to the finding that Plaintiff's drug and alcohol use is material to the disability determination. Three of the infirmities are somewhat intertwined, in that three conclusions reached by the ALJ are not supported by substantial evidence: (1) the ALJ evidently concluded that Plaintiff was using illegal substances through the date of the Decision despite the lack of evidence in the record to support such a conclusion; (2) the ALJ found that when Plaintiff was not using drugs, his condition improved; however, the evidence does not support such a finding; and (3) the ALJ found that the various mental health providers agreed that Plaintiff's mental health problems were caused by his drug and alcohol use, when they did not so agree. The fourth infirmity frustrates judicial review because although the ALJ found that Plaintiff would continue to have a "severe impairment or combination of impairments" absent substance use, the ALJ did not specifically state what impairments and limitations Plaintiff would continue to suffer. The inability to review the ALJ's Decision in this respect is compounded because the ALJ apparently failed to account for Plaintiff's diagnosis

of paranoid schizophrenia and its resulting limitations in assessing Plaintiff's RFC absent substance use. Each of these four deficiencies is discussed in turn.

First, the conclusion that Plaintiff's drug and alcohol use was ongoing through the date of the Decision is not supported by substantial evidence in the record. Notwithstanding the requirement of the CAAA and its implementing Regulations that an ALJ determine "whether the claimant would still be found disabled if he stopped using drugs or alcohol," Doughty, 245 F.3d at 1279 (citing 20 C.F.R. § 404.1535(b)(1)), the ALJ mistakenly concluded that Plaintiff continued to use drugs and alcohol through the date of the Decision. The ALJ recognized in the Decision Plaintiff's "indicat[ion] that he stopped using drugs and alcohol 2 or 3 years ago," Tr. at 39, but the analysis regarding the materiality of drug and alcohol use is premised on the apparent conclusion that Plaintiff was using drugs and alcohol through the date of the Decision. To that end, the ALJ's entire second five-step sequential inquiry was apparently performed under this mistaken conclusion. However, the objective medical evidence shows that Plaintiff had abstained from using drugs and consuming alcohol for at least two to three years prior to the hearing before the ALJ, and probably longer than that. Such a mistaken assumption by the ALJ necessarily had an impact on whether drug and alcohol use was material to the disability determination in light of the ALJ's additional finding that Plaintiff's condition improved when he was not using drugs and alcohol (which is addressed below).

Second, the ALJ's finding that Plaintiff's condition improved when he was not using drugs and alcohol is not supported by substantial evidence in the record. The ALJ initially suggested that his determination regarding the materiality of Plaintiff's drug use stemmed from "the claimant's use of drugs and alcohol caus[ing] the claimant to have psychosis." Tr.

at 34. It is unclear whether a psychosis caused by the use of drugs and alcohol would go into remission in the absence of drug and alcohol use. Apparently, the ALJ assumed it would, opining that "[t]he record clearly shows that during the times when the claimant was no longer using drugs and alcohol, his condition improve[d]." Tr. at 40. Although it is true that Dr. Lye, Plaintiff's treating psychiatrist, often described Plaintiff as "stable" during the years 2003 through 2007, the record also contains many instances of instability or odd behavior during times in which Plaintiff was incarcerated and unable to use drugs and alcohol,[12] or during times in which Plaintiff was self-reporting to Dr. Lye that he was not currently using drugs and alcohol.[13] In fact, Plaintiff's apparent responses to internal stimuli on or about September 8, 2004, despite Plaintiff's cessation of using drugs or alcohol, caused Dr. Lye to reassess his prior diagnosis of substance-induced psychotic disorder. Tr. at 363. On the next visit, Dr. Lye changed Plaintiff's diagnosis to "schizophrenia, paranoid type." Tr. at 362. Although the ALJ recognized early in the Decision some occurrences of

---

[12]    See, e.g., Tr. at 231 (DOC records dated 12/1/1997 documenting Plaintiff laughing for no apparent reason during an examination that was scheduled because Plaintiff was "observed walking out of his room and to the dorm door (outlet) without any clothing on"); Tr. at 211 (DOC records dated 2/12/1998 noting Plaintiff was "grossly psychotic and responding to un-seen stimuli"); Tr. at 205 (DOC records dated 1/8/1999 documenting Plaintiff's prior "response to internal stimuli (bizarre behaviors), confusion, exhibited at some times, at other times symptoms completely absent and denied by patient"); Tr. at 202 (DOC records dated 1/13/1999 documenting Plaintiff's self-report of being told he "was eating toilet paper" but stating he did not remember the occurrence); Tr. at 201 (DOC records dated 1/13/1999 indicating Plaintiff was found eating toilet paper); Tr. at 198 (DOC records dated 2/16/1999 documenting prior delusions and hallucinations); Tr. at 194 (DOC records dated 3/2/1999 stating Plaintiff "[r]efused all medications on 2/19/99 and did not recall the brief psychotic episode"); Tr. at 162 (DOC records dated 6/28/1999 documenting "strange behavior"); Tr. at 170 (DOC records dated 11/27/1999 documenting a staff referral for evaluation because Plaintiff "threw his possessions in trash, washed his penis for hours last night. . . and is acting strange (preoccupied)"); Tr. at 269-73 (evaluation by Dr. Knox documenting confusion and memory impairment); Tr. at 277-78 (notes from North Florida Treatment Center documenting Plaintiff's self-reports of auditory and visual hallucinations, and suspected malingering).

[13]    See, e.g., Tr. at 372 (Dr. Lye's notes dated 12/4/2003 documenting Plaintiff's reports of "off and on echo voices"); Tr. at 363 (Dr. Lye's notes dated 9/8/2004 indicating Plaintiff "may be responding to internal stimuli"); Tr. at 362 (Dr. Lye's notes dated 9/22/2004 indicating Plaintiff had "stopped mumbling to himself"); Tr. at 359 (Dr. Lye's notes dated 1/12/2005 documenting Plaintiff's self-report of hearing voices); Tr. at 385 (Dr. Lye's notes dated 6/27/2005 documenting Plaintiff's mother's reports that he "sits and stares[,] [h]e paces the floor, and there are times he talks to himself").

instability or odd behavior, Tr. at 28-32, when the ALJ opined Plaintiff's condition improved absent the use of drugs and alcohol, he only recognized a "brief reoccurrence of some of [Plaintiff's] symptoms" reported in 2004. Tr. at 40. Therefore, it is unclear whether the ALJ took into account the many instances of instability or odd behavior. Nevertheless, in light of so many occurrences, the ALJ's factual finding that Plaintiff's condition improved absent his use of drugs or alcohol is not supported by substantial evidence.[14]

Third, the ALJ relied on "the various mental health providers all agree[ing] that the claimant's psychosis was caused by his use of drugs and/or alcohol," Tr. at 40, when the record does not contain substantial evidence to support this finding. It is true that all medical personnel indicated Plaintiff had problems with drugs and alcohol and those problems may have been intertwined to some extent with Plaintiff's mental issues, but it was a misstatement to say that all mental health providers agreed that his mental health problems were "caused" by using drugs and alcohol.[15] Treating physicians at the DOC from 1997-2000 diagnosed Plaintiff with paranoid schizophrenia. Treating psychiatrist Dr. Lye initially diagnosed Plaintiff with substance-induced psychotic disorder but became convinced that Plaintiff's mental problems were not substance induced; rather, he became persuaded that they were caused by paranoid schizophrenia. Additionally, evaluating physician Dr. Miller concurred with these diagnoses. Finally, evaluating physician Dr. Knox concurred with

_____

[14]     This is not to say that Plaintiff's condition did not improve when he was regularly taking his medications; in fact, it appears that it did. However, the ALJ specifically based his Decision on Plaintiff's improvement absent "using drugs and alcohol[.]" Tr. at 40. This factual finding is not supported by substantial evidence in the record and was critical to the determination of whether drug and alcohol use was material to Plaintiff's disability.

[15]     To be sure, some medical professionals attributed Plaintiff's mental problems to substance use, including evaluators at Florida State Hospital, Dr. Valente, and initially Dr. Lye (but upon further consideration, Dr. Lye changed his opinion).

these diagnoses, although also opining that Plaintiff had brain damage caused by drug use. Accordingly, the ALJ's factual determination that all mental health providers attributed Plaintiff's mental problems to his use of drugs and alcohol is not supported by substantial evidence in the record.

Fourth, in analyzing whether drug and alcohol use was material to the disability determination, the ALJ did not identify in the second five-step sequential inquiry Plaintiff's severe impairments separate from his drug and alcohol use. Such an omission does not allow for meaningful judicial review of this part of the Decision. Judicial review is further frustrated because the ALJ apparently failed to take into account the diagnosis of paranoid schizophrenia and its resulting limitations in determining the remaining severe impairments and in assessing Plaintiff's RFC.

Once the ALJ found that Plaintiff is unable to perform any type of work due to his substance use problems, the ALJ found in the second five-step sequential inquiry that "[i]f the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments." Tr. at 36 (emphasis omitted). However, the ALJ did not identify the severe impairments. Cf. Riley v. Astrue, No. 08-00029-B, 2009 WL 1357385, at *14 (S.D. Ala. May 14, 2009) (unpublished) (stating if the ALJ determines that a claimant is disabled and "'if the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of substance use disorders are absent'") (quoting Brueggemann v. Barnhart, 348 F.3d 689, 694-95 (8th Cir. 2003)). Furthermore, the ALJ did not refer to the diagnosis of paranoid

schizophrenia which he initially accepted as severe in the first five-step sequential inquiry, nor did the ALJ identify its resulting limitations, in assessing Plaintiff's RFC absent substance use.[16] Combining the omission of the diagnosis with the ALJ's misstatement regarding all medical professionals opining that Plaintiff's psychosis is caused by using drugs and alcohol, it is difficult to ascertain whether the ALJ took this diagnosis into account in the analyses of Plaintiff's remaining severe impairments and RFC. Because Plaintiff relies heavily on this diagnosis and its limitations in attempting to meet his burden of proving that his substance use was not a contributing factor material to the disability determination, see Doughty, 245 F.3d at 1281, it was especially important for the ALJ to consider it and to discuss it in his Decision.

For the foregoing reasons, this matter will be remanded for additional consideration of whether drug and alcohol use is material to the determination of disability. In addition, since the ALJ did not identify Plaintiff's remaining severe impairments or their limitations before assessing the RFC absent substance use, and the RFC was premised on Plaintiff's alleged ongoing substance use, the ALJ must reassess the determination of the remaining severe impairments, any limitations resulting from all impairments, and Plaintiff's RFC.

## B.    Opinion of Plaintiff's Treating Physician

Plaintiff argues "the ALJ failed to even mention, let alone state what weigh[t] [was] provided to th[e] opinion evidence from Dr. Lye" on the 2005 Treating Source Mental Health

---

[16]    Initially, the ALJ found Plaintiff has the severe impairment of "history of schizophrenia[.]" Tr. at 28. In the summary of the medical evidence, the ALJ also recognized that multiple physicians diagnosed Plaintiff with paranoid schizophrenia. Tr. at 28-32. In performing the second five-step sequential inquiry, however, the ALJ did not comment on the initial finding regarding this severe impairment, nor did he comment on the diagnoses, except to say Plaintiff testified that he had been diagnosed with paranoid schizophrenia. Tr. at 39.

Report that Plaintiff can only perform "manual labor part-time" but "becomes agitated and anxious when working full-time." Pl.'s Mem. at 21-22. The Commissioner responds that "the ALJ gave significant weight to Dr. Lye's opinions" generally. Deft.'s Mem. at 14 (citing Tr. at 41). Additionally, the Commissioner points to the opinion of Dr. Valente, an examining physician, that Plaintiff is not precluded from work activity (Deft.'s Mem. at 15 (citing Tr. at 41)) and Dr. Lye's January 2007 notation that Plaintiff was stable enough to find a job (Deft.'s Mem. at 14 (citing Tr. at 389)). Further, the Commissioner argues that "[t]o the extent Dr. Lye's 2005 Treating Source Mental Health Report could be interpreted as reducing the ALJ's finding that Plaintiff was capable of performing a range of medium work, Dr. Lye's opinion would not be supported by his own clinical notes or the other evidence in the record." Deft.'s Mem. at 15 (internal citations omitted).

The Regulations instruct ALJs how to properly weigh the medical opinions[17] of treating physicians.[18] See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due

---

[17]    Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[18]    A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes that the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ did not discuss Dr. Lye's opinion that Plaintiff can only work part-time due to Plaintiff "becom[ing] anxious when working long periods of time." Tr. at 315-16. Because the opinion was not discussed by the ALJ, it is impossible to determine whether it was even considered.[19] Without an explanation of the weight afforded Dr. Lye's opinion that Plaintiff

---

[19]     The undersigned recognizes that a medical source's statement that a claimant is "disabled," as opposed to a medical source's statement as to the nature and severity of a claimant's impairments, is not entitled to significant evidentiary weight because it is an opinion on the issue of disability, which is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1). However, it appears Dr. Lye's statement was not an
(continued...)

can only work part-time because of Plaintiff's tendency to get anxious when working for long periods of time, the undersigned is unable to conduct a meaningful review of the ALJ's evaluation of Dr. Lye's opinion.  Additionally, to the extent the Commissioner argues Dr. Lye's opinion regarding Plaintiff's inability to work full-time may be inconsistent with his later note that Plaintiff was stable enough to find employment, those statements may not be inconsistent because it is unclear whether Dr. Lye was referring to part-time or full-time employment in the later note.  See Tr. at 389.  Finally, the Commissioner's after-the-fact justification for the ALJ's failure to discuss Dr. Lye's opinion regarding Plaintiff's ability to retain employment does not suffice.  Thus, on remand, the ALJ shall state with particularity the weight he is affording Dr. Lye's opinion that Plaintiff can only work part-time; if the opinion is discounted, the ALJ shall articulate reasons showing good cause for discounting it.  See Lewis, 125 F.3d at 1440.

## VI.  Conclusion

Further consideration of whether drug and alcohol use is a contributing factor material to Plaintiff's disability is required.  In addition, the ALJ did not discuss an opinion of Plaintiff's treating psychiatrist that Plaintiff can work only part-time.  In accordance with the foregoing, it is

**ORDERED:**

---

[19](...continued)
opinion on Plaintiff's ultimate disability status; rather, it was a comment on his ability to function for long periods of time in an everyday work setting in light of Plaintiff's mental impairment.

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

(a)    Reconsider whether drug and alcohol use is material to the determination of disability. In addition, reassess the determination of the remaining severe impairments absent drug and alcohol use, any limitations resulting from all impairments, and Plaintiff's RFC;

(b)    State with particularity the weight afforded to Dr.Lye's opinion with respect to Plaintiff being able to work only part-time; if the opinion is discounted, articulate reasons showing good cause for discounting it; and

(c)    Take such other action as may be necessary to resolve this claim properly.

2.    The Clerk of Court is directed to close the file.

3.    If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  <u>See Bergen v. Comm'r Soc. Sec.</u>, 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on March 16, 2010.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
Counsel of Record